IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

MR. PERRY HAMBURGER

PLAINTIFF - APPELLANT

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPEANY

DEFENDANT - APPELLEE

-------------------------------------------------------------------------------------------------------

ON APPEAL
FROM THE JUDGMENT OF THE HONORABLE NANCY K. JOHNSON,
MAGISTRATE JUDGE PRESIDING
UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF TEXAS
STATE OF TEXAS

**ORIGINAL BRIEF
FILED ON BEHALF OF
MR. PERRY HAMBURGER**

ATTORNEYS FOR APPELLANT
MR. PERRY HAMBURGER:

| | |
|---|---|
| TIMOTHY W. CERNIGLIA, ESQ. | THOMAS M. FARRELL, ESQ. |
| (TEXAS BAR NO.00789930) | (TEXAS BAR NO. 06839250) |
| SHARP, HENRY, CERNIGLIA, | NICKENS, KEETON, LAWLESS, |
| COLVIN, WEAVER & HYMEL, L.L.C. | FARRELL & FLACK, L.L.P. |
| 400 POYDRAS STREET, SUITE 1330 | 600 TRAVIS, SUITE 7500 |
| NEW ORLEANS, LOUISIANA 70130 | HOUSTON, TEXAS 77002 |
| Telephone:  (504) 586-1555 | Telephone:  (713) 571-9191 |
| Facsimile:   (504) 586-9755 | Facsimile:   (713) 571-9652 |

## CERTIFICATE OF INTERESTED PERSONS

The undersigned counsel of record certifies that the following listed persons

have an interest in the outcome of this case. These representations are made in order

that the judges of this court may evaluate possible disqualification or recusal.

MR. PERRY HAMBURGER
5342 HILDALGO DRIVE
HOUSTON, TEXAS 77056

ATTORNEYS OF RECORD FOR MR. HAMBURGER:
TIMOTHY W. CERNIGLIA, ESQ.
SHARP, HENRY, CERNIGLIA, COLVIN, WEAVER & HYMEL, L.L.C.
400 POYDRAS STREET, SUITE 1330
NEW ORLEANS, LOUISIANA 70130
Telephone: (504) 586-1555
Facsimile: (504) 586-9755

THOMAS M. FARREL, ESQ.
NICKENS, KEETON, LAWLESS, FARRELL & FLACK, L.L.P.
600 TRAVIS, SUITE 7500
HOUSTON, TEXAS 77002
Telephone: (713) 571-9191
Facsimile: (713) 571-9652

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

ATTORNEY OF RECORD FOR STATE FARM:
BETH MCCAHILL TAYLOR, ESQ.
TAYLOR & TAYLOR
MELLIE ESPERSON BUILDING
815 WALKER, SUITE 250
HOUSTON, TEXAS 77002
Telephone: (713) 615-6060
Facsimile: (713) 615-6070

## Mr. Hamburger's Request for Oral Argument

In accordance with Local Rule 28.2.4, Mr. Perry Hamburger requests oral argument in order to better present and articulate issues raised in written briefs. This case was riddled with procedural errors in both the preliminary stages of the case and at trial that had a direct impact on plaintiff's overall claims. The issues involved will be better clarified and best augmented by oral argument. Mr. Hamburger suggests that oral argument will better clarify and best augment the issues so that this Court's decisional process will be significantly aided.

# TABLE OF CONTENTS

CERTIFICATE OF INTERESTED PERSONS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

MR. HAMBURGER'S REQUEST FOR ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . iii

TABLE OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

JURISDICTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

STATEMENT OF ISSUES PRESENTED FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . 7

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

STATEMENT OF FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

SUMMARY OF THE ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

       SUMMARY JUDGMENT WAS IMPROPER . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

          1.    MR. HAMBURGER WAS DENIED
              NECESSARY DISCOVERY TO ESTABLISH BAD FAITH . . . . . . . 22

          2.    THERE WERE MATERIAL FACTS IN DISPUTE
              PRECLUDING SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . 23

       ABUSE OF DISCRETION
       TO EXCLUDE OPINION TESTIMONY OF DR. FITZGERALD . . . . . . . . . . . . . . . 25

       LAY TESTIMONY IS ADEQUATE
       TO ESTABLISH CAUSE OF PLAINTIFF'S HERNIATED DISC . . . . . . . . . . . . . . . 28

       OFFSET OF PIP PAYMENTS
       WAS INAPPROPRIATE UNDER THE CIRCUMSTANCES. . . . . . . . . . . . . . . . . . . 29

ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

    I.  GRANTING OF PARTIAL SUMMARY JUDGMENT WAS ERROR. . . . . . . . . . . 31

        A.    ABUSE OF DISCRETION TO GRANT
        PARTIAL SUMMARY JUDGMENT WITHOUT
        AFFORDING MR. HAMBURGER NEEDED
        AND REQUESTED DISCOVERY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31

        B.    QUESTIONS OF MATERIAL FACTS
        EXISTED WHICH PRECLUDED A
        MOTION FOR PARTIAL SUMMARY JUDGMENT . . . . . . . . . . . . . . . . . . . 40

    II. ABUSE OF DISCRETION TO EXCLUDE
    OPINION TESTIMONY OF DR. FITZGERALD. . . . . . . . . . . . . . . . . . . . . . . 45

    III. LAY TESTIMONY  WAS ADEQUATE
    TO ESTABLISH CAUSE OF PLAINTIFF'S HERNIATED DISC.. . . . . . . . . . . . . . 53

    IV.  STATE FARM WAS NOT ENTITLED TO AN OFFSET .. . . . . . . . . . . . . . . . 60

CONCLUSION  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 64

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 66

CERTIFICATE OF COMPLIANCE WITH RULE 32(a) . . . . . . . . . . . . . . . . . . . . . . . 67

# TABLE OF AUTHORITIES

CASES

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257,
106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . 33, 36

*Battle v. Memorial Hospital at Gulfport*, 228 F. 3d 544 (5 Cir. 2000) . . . . . 26, 48

*Blankenship v. Mirick,*
984 S.W.2d 771 (Tex.App.—Waco, 1999) . . . . . . . . . . . . . . . . . 28, 53, 54

*Bradley v. United States*, 866 F.2d 120 (5 Cir. 1989) . . . . . . . . . . . . . . . . . 27, 51

*Brown v. Best Foods, A Div. Of CPC International, Inc.*,
169 F.R.D. 385 (N.D. Ala. 1996) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 49

*Brown v. Mississippi Valley State University*,
311 F.3d 328 (5th Cir. 2002). . . . . . . . . . . . . . . . . . . . . . . . . . . . 23, 31, 32, 33

*Campbell v. Keystone Aerial Surveys*, 138 F. 3d 996 (5 Cir. 1998) . . . . . . . . 27, 51

*Celotex Corp. v. Catrett*,
477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). . . . . . . . . . . . . . . 36

*Cities Service Company v. Ellison*,
698 S.W.2d 387 (Ct.App–Houston, 14th Dist, 1985). . . . . . . . . . . . . . . . . 69

*Davoll v. Webb*, 194 F.3d 1116 (10 Cir. 1999). . . . . . . . . . . . . . . . . . . . . . 27, 47, 48

*EEOC v. General Dynamics Corp.,* 999 F. 2d 113 (5 Cir. 1993) . . . . . . . . . . 27, 51

*Fontenot v. Upjohn*, 780 F.2d 1190 (5th Cir. 1986). . . . . . . . . . . . . . . . . . 33, 37, 40

*Hawkins v. Graceland,* 210 F.R.D. 210 (W.D. Tenn 2002) . . . . . . . . . . . . . . 27, 49

*Higginbotham v. State Farm Mutual Automobile Insurance Company*,

103 F.3d 456 (5th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 31, 45

*International Shortstop, Inc. v. Rally's, Inc.*,
939 F.2d 1257 (5th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . 23, 35, 36, 37, 44

*King v. State Farm Mutual Automobile Insurance Company*,
2001 WL 694576 (N.D. Tex. 2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

*Mangla v. University of Rochester*, 168 F.R.D. 137 (W.D. N.Y. 1996) . . . . . 27, 49

*Maritime Overseas Corp. v. Ellis*,
886 S.W. 2d 780 (Tex. App. Houston 1994) . . . . . . . . . . . . . . . . . . . . . . . 28

*McGuire v. Davis*, 437 F.2d 570 (5 Cir. 1971) . . . . . . . . . . . . . . . . . . . . . . . . . . 49

*Mid-Century Ins. Co. v. Kidd,* 997 S.W. 2d 265 (Tex. 1999) . . . . . . . . . . . . . . . 62

*Morgan v. Compugraphic Corp.*,
675 S.W. 2d 729 (Tex. 1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . 28, 53, 54, 56

*Salas v. United States*, 165 F.R.D. 31 (W.D. N.Y. 1995)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27, 48, 50

*State Farm Fire & Casualty v. Simmons*, 963 S.W.2d 42 (Tex. 1998) . . . . . 23, 41


STATUTES

28 U.S.C. §1291 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

28 U.S.C. §1332 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

28 U.S.C. §1441 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

MR. PERRY HAMBURGER

PLAINTIFF - APPELLANT

V.

STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY

DEFENDANT - APPELLEE

## JURISDICTION

In accordance with Federal Rule of Appellate Procedure 28(a)(4)(A) through

(D), Perry Hamburger hereby provides the following Jurisdictional Statement:

A. Defendant removed the case from state court pursuant to 28 U.S.C.

§1441(a). While defendant alleged diversity jurisdiction under 28

U.S.C. §1332,[1] the parties being of diverse citizenship, defendant only

averred in its notice of removal that Mr. Perry Hamburger's claims

exceeded the sum or value of $50,000.00 exclusive of interests and

---

[1] In its Notice of Removal, while stating the removal was based on diversity of citizenship, State Farm actually cited 28 U.S.C. 1331 (a) (1), federal question jurisdiction.

costs. Jurisdiction was not contested by plaintiff.

B.    Jurisdiction is conferred on the United States Court of Appeals for the Fifth Circuit by 28 U.S.C. § 1291, as this is an appeal from a final decision of the United States District Court for the Southern District of Texas.

C.    Partial summary judgment dismissing Mr. Hamburger's claims based on State Farm's bad faith and violations of the Texas Deceptive Trade and Practices Act and the Texas Insurance Code was entered on May 24th, 2002.  Trial on the remaining claims commenced on August 29, 2002. On August 30, 2002, the jury returned a verdict in Plaintiff's favor of $50,000.00.  On September 6, 2002 the lower court entered a final judgment in conformity with the jury's verdict.  State Farm moved to alter the final judgment on September 13th, 2002.  This motion was granted on September 27th, 2002.  Plaintiff timely filed his Notice of Appeal on October 3rd, 2002.

D.    Appellant hereby certifies that this is an appeal from a final judgment of the United States District Court for the Southern District of Texas as to Mr. Hamburger's claims and damages.

**STATEMENT OF ISSUES PRESENTED FOR REVIEW**

**ISSUE NUMBER ONE**

Did the trial court abuse its discretion by granting State Farm's Motion for Partial Summary Judgment on Mr. Perry Hamburger's claims under the Texas Deceptive Trade Practices Act (DTPA) and under the Texas Insurance Code for failure to act in good faith before Mr. Hamburger had been afforded a full opportunity to conduct discovery, particularly since the evidence needed to create a genuine issue for trial was in the possession of State Farm, the moving party, and Mr. Hamburger's timely Motion to Compel the production of documents and the deposition of State Farm representatives was denied?

**ISSUE NUMBER TWO**

Did the lower court err in granting State Farm's Motion for Partial Summary Judgment on Mr. Perry Hamburger's claims under the Texas Deceptive Trade Practices Act (DTPA) and under the Texas Insurance Code for failure to act in good faith when there were material facts in dispute and the evidence suggested that State Farm was not acting in good faith and was not following the terms of its policy of insurance?

**ISSUE NUMBER THREE**

Did the trial court abuse its discretion by prohibiting Dr. Lynn Fitzgerald—Mr.

-7-

Hamburger's treating physician who performed the surgery—from giving her medical opinion as to the cause of his condition for failure to furnish an expert report, notwithstanding that Dr. Fitzgerald was his treating physician? State Farm had listed Dr. Fitzgerald as an expert witness in its initial disclosures, had been provided a copy of her operative report and office records, and had deposed Dr. Fitzgerald by written questions as to her opinion on causation.

### ISSUE NUMBER FOUR

Did the trial court abuse its discretion by instructing the jury that as a matter of law Mr. Hamburger's herniated disc was not caused by the automobile accident, when the uncontroverted testimony of Mr. Hamburger's witnesses established a strong, logically traceable connection between his accident and his condition?

### ISSUE NUMBER FIVE

The jury's award of Mr. Hamburger's pain and suffering, following the trial court's instructions, did not award anything for Mr. Hamburger's herniated disc. Did the trial court err when it granted an offset for State Farm's payment of the medical costs and expenses associated with his cervical disc surgery under the PIP clause of its policy?

## STATEMENT OF THE CASE

Mr. Perry Hamburger filed suit on July 24, 2001, in the 165th Judicial District Court of Harris County, Texas against his insurance company, State Farm Mutual Automobile Insurance Company ("State Farm"), for breach of the Uninsured/Under Insured ("UM") clause of the insurance policy. He also alleged damages under the Texas Deceptive Trade Practices Act (DTPA) and the Texas Insurance Code. His petition prayed for economic damages, mental anguish, treble damages, attorney's fees, interest, and cost of suit, but did not specify an amount of damages.

State Farm answered Mr. Hamburger's petition on or about August 30th, 2001, alleging an offset of $35,000, the amounts previously paid to Mr. Hamburger by the original tortfeasor's insurer and under its Personal Injury Protection (PIP) clause, and alleging that his surgery was not caused by the automobile accident. On September 7th, 2001, State Farm removed the case to federal court on the basis of diversity—averring only that the amount in controversy exceeded $50,000.00. Mr. Hamburger did not contest removal.

On March 15th, 2002, State Farm moved for partial summary judgment on Mr. Hamburger's claims under the Texas DTPA and the Texas Insurance Code. On April 15th, 2002, Mr. Hamburger served State Farm with a Request for Production of Documents seeking materials relating to its evaluation, determination, and denial of

his UM claims.  He also requested the deposition of two representatives of State Farm.  When State Farm refused to provide the representatives who handled his claim for deposition and failed to respond in any fashion to his Request for Production of Documents, Mr. Hamburger filed a Motion to Compel on May 20th, 2002.  On May 23rd, 2002, the case was referred for all purposes to Magistrate Nancy K. Johnson.  On May 28th, 2002, without mentioning Mr. Hamburger's Motion to Compel or without the benefit of oral arguments, Magistrate Johnson's ruling on State Farm's motion was filed, granting State Farm's Motion for Partial Summary Judgment and dismissing all of Mr. Hamburger's claims under the Texas DTPA and the Texas Insurance Code.

Plaintiff filed a Motion to Reconsider on June 5th, 2002, urging the need to depose State Farm representatives and to obtain copies of plaintiff's claim file.  This was heard on June 12th, 2002, along with plaintiff's Motion to Compel.  The trial court denied both of plaintiff's motions.

On June 12th, 2002, the trial court also excluded Mr. Hamburger's treating physician from testifying as to  her opinion of the cause of Mr. Hamburger's condition for which the surgery was needed.  On August 23rd, 2002, the trial court denied Mr. Hamburger's motion to reconsider the exclusion of Dr. Fitzgerald's testimony as to medical causation of the condition for which she treated him.  On

August 27th, 2002, this Court denied Mr. Hamburger's Application for Writs of Mandamus and a Stay. Trial by jury proceeded on August 29th, 2002.

During trial, Mr. Hamburger and his wife testified that he never had any problems prior to the accident, that his neck pains got progressively worse after the accident until surgery was needed, and that after surgery his neck and radicular pain was resolved. Dr. Lynn Fitzgerald testified that the degenerative condition of Mr. Hamburger's cervical spine was not causing the problem for which she performed surgery. Dr. Thomas Parr testified that a sudden motion, like a whiplash, could cause Mr. Hamburger's onset of pain. Notwithstanding, prior to jury deliberations, the trial court instructed the jury that "as a matter of law" Mr. Hamburger's herniated disc was not caused by the automobile accident and that it was not to award any compensation for his pain and suffering related to the herniated disc and the resultant surgery.

The jury's verdict was for Mr. Hamburger, awarding $50,000.00. The trial court issued a final judgment on September 6th, 2002. On September 13th, 2002, State Farm moved to alter or amend the final judgment. Mr. Hamburger moved for a new trial on September 20th, 2002, which was denied on September 23rd, 2002. On September 30th, 2002, the trial court issued an order granting State Farm's motion to alter or amend the judgment and granting an offset of $25,000 for the payment by the original tortfeasor's insurer and of $10,000 for PIP payment by State Farm. Thereby,

the trial court reduced the award to Mr. Hamburger to $5,000. The trial court entered

a final judgment that day in accordance with its order. On October 3rd, 2002, Mr.

Hamburger timely filed his notice of appeal.

### STATEMENT OF FACTS

The genesis of this lawsuit is an automobile accident that occurred on July 26th,

1999, in which a Mr. Chudeobe Anwusi struck Mr. Hamburger from the rear. Mr.

Hamburger had an immediate onset of pain. He reported the incident to his insurer,

State Farm. The pain got progressively worse over a period of time—progressing to

the point that it was shooting down his arm and shoulder. Over the course of several

months he sought treatment with Denise Cope, a physical therapist, Dr. Thomas Parr,

an orthopedist, and eventually saw Dr. Lynn Fitzgerald, a neurosurgeon, on December

2nd, 1999. He decided on Dr. Fitzgerald because he was in severe pain and could not

get an appointment to see another physician who had been recommended. (R, Vol.5,

p. 170:15-23). Surgery was performed by Dr. Fitzgerald on December 16th, 2002.

On August 15th, 2000, State Farm authorized Mr. Hamburger to settle his case

against Mr. Anwusi's insurer, Old American Insurance Company, which was

required under the State Farm Policy in order to pursue a claim under the UM clause.

State Farm also forwarded an application for PIP payments. (R, Vol. 6, p.7:20 to

p.8:22). Both the PIP and the UM clause of State Farm's policy requires that there

be bodily injury caused by an accident. PIP only pays for medical expenses and lost wages caused by the accident, and then only up to the PIP policy limits.[2] The UM pays for all damages an insured is entitled to recover from an uninsured or under insured person caused by the accident, but again, only up to the UM policy limits. (R, Vol. 6, p.11:8-p.12:11, p. 14:12-p.15:7). Mr. Anwusi's insurer, Old American Insurance Company, paid the $25,000 limits of its policy.

By correspondence September 13th, 2000, State Farm requested medical documentation so that it could process both the PIP claim and the UM claim. By October 30th, 2000, State Farm had all of the medical documentation it had requested, including the medical records of Dr. Fitzgerald, the Baylor College of Medicine, Department of Neurosurgery, and Dr. Parr. (R, Vol. 6, p.15:8 to p.19:12). On February 9th, 2001, State Farm sent out a check for the PIP policy limits of $10,000 because their claims representative, Matt Schomberg, had made the determination that all of the medical records submitted were related to the automobile accident with Mr. Anwousi. However, Schomberg was still evaluating the UM clam. (R, Vol. 6, p.19:14 to p. 20:4). State Farm's last request for any information from Mr. Hamburger was on March 20th, 2001, when it asked for the addresses of a Dr. Rubin and Dr. Parr, which Mr. Hamburger immediately produced even though State Farm

---

[2] Plaintiff had no lost wages and made no claim for them.

already had their records. (R, Vo. 6, p. 24:1-19). Over four months later, July 30th, 2001, State Farm denied his claim for UM benefits, stating that it felt $35,000— $25,000 from Old American and $10,000 PIP payments—"was adequate compensation for Mr. Hamburger's claim". (R. Vol. 2, p. 145).

Plaintiff filed suit in the 165th Judicial District Court of Harris County, Texas, which State Farm then removed. State Farm answered the petition, asserting that Mr. Hamburger's herniated disc and surgery was not caused by the accident with Mr. Anwusi and denying it acted in bad faith or violated the Texas Insurance Code.

After removal, the parties—pursuant to FRCP Rule 26(f)—executed a joint discovery/case management plan on November 16th, 2001, in which Mr. Hamburger stated that he would seek the depositions of Matt Schomberg, State Farm's adjuster, "as well as other State Farm claim personnel which plaintiff may decide after reviewing documents exchanged in initial disclosure."[3] Mr. Hamburger identified Dr. Fitzgerald, his treating physician who performed a cervical laminectomy/disectomy, as someone he anticipated deposing. On December 7th, 2001, the trial court issued the docket control order and set February 1, 2002 as the date Mr. Hamburger was to identify his experts and produce expert reports. State Farm was given until March 8th, 2002. A discovery cutoff of May 31st, 2002, was established.

---

[3] See exhibit "A".

-14-

On or about January 2nd, 2002, State Farm filed its Rule 26(a) initial disclosure wherein it identified Catherine Wesley and Matt Schomberg, the representatives who handled Mr. Hamburger's claim, and Dr. Fitzgerald as individuals likely to have discoverable information. On December 26th, 2001, State Farm noticed the Deposition of Dr. Fitzgerald by Written Questions, seeking all of her medical records. Dr. Fitzgerald's office, by response dated February 4th, 2002, provided State Farm a complete copy of Dr. Fitzgerald's records, including her operative report.

On March 8th, 2002, State Farm designated its experts, which included Mr. Hamburger's medical providers, including Dr. Fitzgerald. State Farm asserted in that designation that the "above listed witnesses were listed by Plaintiff as medical providers and may testify concerning the medical history of Perry Hamburger, their own credentials, exams, diagnosis, tests and results, and regarding other aspects of damages claimed by Perry Hamburger. . . . The mental impressions and opinions of these medical providers may be found in their medical records. " (R. Vol. 2, p. 63-64). State Farm also identified Dr. Martin Steiner as an expert and attached a report from him dated October 1st, 2001, wherein he expressed the opinion that the automobile accident did not cause Mr. Hamburger's condition. He based his opinion on all of the medical records of Mr. Hamburger's medical providers, including that of Dr. Fitzgerald. On April 18th, 2002, State Farm noticed the deposition of Dr.

-15-

Fitzgerald by written question, seeking her opinion as to medical causation.[4]

On March 15th, 2002, State Farm moved for summary judgment, alleging Mr. Hamburger's lack of factual support for his claims under the Texas DTPA and the Texas Insurance Code. Mr. Hamburger filed his Memorandum in Opposition to State Farm's Motion for Partial Summary Judgment on April 2nd, 2002. On April 15th, 2002, he served State Farm with a Request for Production of Documents, requesting *inter alia* State Farm's claim file; materials relating to its evaluation of all aspects of his claim, including medical causation; and medical records and reports used in adjusting, investigating, and paying amounts on his claims. (R, Vol. 2, p. 168-170). State Farm did not respond to this request. Mr. Hamburger had also previously requested that State Farm produce the two representatives who handled his claims, Matt Schomberg and Catherine Wesley, for deposition. By correspondence dated April 30th, 2002, defendant responded that it would not produce the two witnesses requested for deposition.

In his Memorandum in Opposition to State Farm's Motion for Partial Summary Judgment, Mr. Hamburger asserted that since State Farm provided no reason for its

---

[4]      Dr. Fitzgerald did not respond until August 6th, 2002. (R, Vol.2, p.323-330). However, in response to questions 16 and 17 of the questions propounded by defendant, Dr. Fitzgerald stated that she was of the opinion that Mr. Hamburger's condition for which she performed surgery was caused by the automobile accident of July 26th, 1999. (R., Vol.2, p. 329).

determination of denial of coverage, the subjective reason or lack thereof could only be determined from the testimony of the two claims representatives who handled his claim, and as such constituted a material disputed fact. (R, Vol. 2, p.151-152). Also, Mr. Hamburger attached Ms. Catherine Wesley's letter of July 30th, 2001, wherein she indicated that "$35,000 was adequate compensation for Mr. Hamburger's claim." The $10,000 PIP payment made a part of the $35,000 evaluation was for medical expenses determined by State Farm to have been caused by the accident. This determination was totally inconsistent with the defense that Mr. Hamburger's need for surgery was not caused by the accident. Ms. Wesley's letter failed to provide any explanation for why this amount was adequate compensation. It also demonstrated that State Farm's determination was untimely under State Farm's own policies

Mr. Hamburger filed a Motion to Compel on May 20th, 2002, requesting that State Farm be ordered to produce Catherine Wesley and Matt Schomburg for deposition and produce the materials requested in his Request for Production of Documents propounded to State Farm. Four days later, without any reference to plaintiff's Motion to Compel and without the benefit of oral arguments, the trial court, now Magistrate Nancy Johnson, granted State Farm's Motion for Partial Summary Judgment. The court's ruling was filed on May 28th, 2002.

On June 5th, 2002, Mr. Hamburger filed a Motion to Reconsider the granting

of State Farm's Motion for Partial Summary Judgment, urging the need to depose Catherine Wesley and Matt Schomburg in order to obtain evidence of State Farm's bad faith. Oral arguments were heard on the Motion to Reconsider on June 12th, 2002. Mr. Hamburger's Motion to Compel was also heard on June 12th, 2002. He specifically urged the need to depose the State Farm representatives in order to establish the evidence of State Farm's bad faith conduct. (R, Vol. 4, p. 2:15 to p. 3:11). The trial court denied his Motion for Reconsideration of the granting of State Farm's Motion for Partial Summary Judgment and denied his Motion to Compel, indicating that the discovery Mr. Hamburger sought, though filed within the discovery deadline, "should have been taken a lot earlier". (R. Vol.4, p. 6:7-17).

Out of an abundance of caution, on April 30th, 2002, Mr. Hamburger had filed a designation of experts, listing his medical providers who were listed by State Farm and to whom State Farm had submitted a deposition by written questions. Mr. Hamburger's list included Dr. Lynn Fitzgerald. On May 23rd, 2002, State Farm filed a motion to strike the medical providers listed by Mr. Hamburger for failure to timely identify and produce expert reports. This motion by State Farm was also heard on June 12th, 2002. Mr. Hamburger informed the lower court that no expert report was obtained from Dr. Fitzgerald because she was not retained as an expert, but rather was his treating physician and further that State Farm had all of her records. (R, Vol. 4,

p. 9:11-16).   Indicating that "turning over medical records is not a substitute for expert reports," the lower court granted State Farm's motion to exclude the testimony of his medical providers, with the exception of Dr. Thomas Parr, for whom State Farm waived its objection having already deposed him.  (Vol. 4, p. 11:16-18).

On August 19th, 2002, Mr. Hamburger filed a motion to reconsider the striking of Dr. Fitzgerald's testimony as to medical causation since State Farm had deposed Dr. Fitzgerald by written questions and had been provided a copy of her answers. Alternatively, Mr. Hamburger moved to continue the trial to give State Farm additional time to further address the opinions voiced by Dr. Fitzgerald in her responses to the deposition by written question[5], and so as to not prejudice Mr. Hamburger with such a harsh result.   This motion was denied on August 23rd, 2002.

After Mr. Hamburger's application for writs to this Court was denied, the case proceeded to trial on August 29th, 2002.  At trial Dr. Parr testified that while he had no opinion as to what caused Mr. Hamburger's herniated disc, it could be caused by an automobile accident. (R, Vol. p. 139:3-15) or by degenerative changes.  He emphasized that anything that "would cause the body to jerk in any direction suddenly" could cause the condition that was present in Mr. Hamburger.  (R, Vol. p.

---

[5]     Defendant had already retained Dr. Steiner who rendered an opinion based on all of plaintiff's medical records, including Dr. Fitzgerald, that plaintiff's condition was not caused by the automobile accident.  (R, Vol. 2, p.320-23).

142:8-16). Dr. Fitzgerald testified that the degenerative changes in Mr. Hamburger's spine was not the cause of his problems. The problem was a herniated disc pressing against a nerve, which she relieved. Dr. Fitzgerald further testified that after the surgery Mr. Hamburger got his strength back and the pain down his arm was gone. (R, Vol. p. 113:18 to p. 114:10, p. 104:24 to p. 105: 11).

Mr. Hamburger testified that from the moment of the accident on he had pain in his neck that got progressively worse. "I had pain in the neck and that continued for some time, never went away. It just continued to be there, got progressively worse. And over the next couple of months, the pain seemed to progress from the neck to the shoulder, down my arm and to the hand." (R, Vol. 5, p. 162:21-25). He testified that over the course of those several months he saw a physical therapist, which did not help, tried to manage the pain, but eventually saw Dr. Parr and then Dr. Fitzgerald. (R. Vol. 5, p. 164 - 171). Prior to the automobile accident, he never had problems with his neck, and he was not involved in other incident or event between the accident and his eventual surgery. (R. Vol. 5, p. 171:14-22).

His wife, Marcy Hamburger, corroborated the testimony. She observed her husband's pain get progressively worse. She also confirmed his course of first trying to see a physical therapist, then Dr. Parr, and finally Dr. Fitzgerald. She described how after the accident the pain was such that her husband had to sleep in a recliner

with a support around his neck. After the surgery, her husband's condition improved for the most part. (R. Vol. 6, p. 42 - 54).

At the close of evidence, State Farmed moved for Judgment as a Matter of Law, that Mr.Hamburger's herniated disc and surgery was not caused by the accident. After oral arguments, the trial court ruled that "as a matter of law" the herniated disc was not caused by the automobile accident, and so instructed the jury. "The court has determined as a matter of law that Plaintiff has not shown a causal connection between the automobile accident and the herniated disc. Therefore you may consider awarding compensation only for the Plaintiff's pain and suffering which is not related to the herniated disc, its related pain and suffering, and the resultant surgery". (R. Vol. 1, p. 381-382).

The jury returned a verdict of $50,000 in favor of Mr. Hamburger. State Farm moved to amend, requesting an offset of the $25,000 paid by Old American and another $10,000 offset for the amount it paid in PIP benefits, even though the trial court directed the jury it could not compensate for any of the costs of Mr. Hamburger's resultant surgery. The trial court agreed with State Farm. Without explaining its reasoning, the trial court stated that to deny State Farm the offset would allow Mr. Hamburger a "back door recovery" of medical expenses and "reward a failure of proof by a party". (R. Vol. 1, p. 495-496).

# SUMMARY OF THE ARGUMENT

SUMMARY JUDGMENT WAS IMPROPER.

    1.    MR. HAMBURGER WAS DENIED NECESSARY DISCOVERY TO ESTABLISH BAD FAITH.

The Trial court was premature in granting State Farm's summary judgment. The facts that could support State Farm's failure to timely and in good faith settle Mr. Hamburger's claims lay within the knowledge and files of State Farm. State Farm resisted Mr. Hamburger's efforts to depose their representatives and totally failed to respond to his Request for Production of Documents. The Request for Production of documents was served on them forty-five days before the discovery deadlines. Similarly, he had requested dates for the deposition of Matt Schomburg and Catherine Wesley, which were ignored. Finally on April 30, 2002, State Farm took the position that their testimony was irrelevant, although there had been no ruling on their Motion for Partial Summary Judgement. Mr. Hamburger filed a Motion to Compel shortly thereafter.

The trial court, not taking notice of Mr. Hamburger's Motion to Compel, granted State Farm's motion. Within five working days , Mr. Hamburger filed a motion to reconsider specifically pointing out the need to take the depositions of the State Farm representatives and to obtain a copy of their claim file. This Court has

held that in cases where bad faith is alleged and the evidence of bad faith lays within the control of the moving party, that summary judgment is inappropriate until after adequate discovery has been afforded the plaintiff.[6]  Mr. Hamburger was not afforded any discovery on this issue.  Contrary to the court's belief, within two weeks of State Farm filing its motion for partial summary judgement, Mr. Hamburger sought discovery needed to establish State Farm's failure to timely, and in good faith, settle a claim for which liability was reasonably clear.  When State Farm refused, Mr. Hamburger sought relief from the court in a timely manner.  He was denied the opportunity to obtain the evidence he needed to support his claims to the trial court's satisfaction.

2.  THERE WERE MATERIAL FACTS IN DISPUTE PRECLUDING SUMMARY JUDGMENT.

This Court has held that cases involving bad faith are not well suited for summary judgment.[7]  The Texas Supreme Court has held that cases under the DTPA and the Texas Insurance Code always involve a question of fact.[8]  State Farm's inconsistent conduct raised a question of fact as to its good faith in settling a claim

---

[6]  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d 1257, 1267 (5th Cir. 1991); See also *Brown v. Mississippi Valley State University*,311 F.3d 328, 333 (5th Cir. 2002).

[7]  *International Shortstop, Inc. v. Rally's, Inc.*, 939 F.2d at 1265.

[8]  *State Farm Fire & Casualty v. Simmons*, 963 S.W.2d 42, 44 (Tex. 1998).

for which liability was reasonably established.

State Farm was provided all of the medical records relating to Mr. Hamburger's surgery. State Farm had all of this information by October 30th, 2000. A demand under PIP and UM was made in February of 2001. While State Farm agreed that PIP payments were due—thus recognizing the causal nexus between the accident and Mr. Hamburger's surgery—no response was forthcoming on the UM claim until the correspondence of July 30th, 2002.

With no explanation for such an obviously deficient evaluation of the value of Mr. Hamburger's injuries, the correspondence of July 30th, 2002 was nothing more than a pretexual denial of a claim. A statement that $35,000 is a sufficient amount of damages for a herniated disc and for four months of severe pain and medical expenses in excess of $18,000.00, simply has no basis in reason. To find that such a pretexual denial is sufficient for UM claims would be to emasculate the DTPA and the Insurance Code . All an insurance company need ever do is inform the insured that he has been adequately compensated with no need to provide any basis or reasons for such a determination.

State Farm knows well that the damages for pain and suffering and medical expenses for a herniated disc greatly exceeds the sum of $35,000. That State Farm's knowledge and prior experiences can only be demonstrated with testimony and

records from State Farm does not mean that there is no dispute of material facts. The unreasonableness of their position alone demonstrates issues of material fact that should preclude a summary judgment.

Further, the letter clearly shows that State Farm did not fairly, promptly, nor equitably attempted to settle Mr. Hamburger's claim in good faith. State Farm's own policy requires it to notify the insured of its decision with an explanation in 15 days of receipt of a claim. (See Exhibit B to defendant's motion for partial summary judgment, R. Vol.2, p. 85). After having all of the information it needed, and after determining that the accident caused the need for Mr. Hamburger's surgery, State Farm failed to do anything for over four months. And then, State Farm responded with a baseless denial of his claim.

ABUSE OF DISCRETION TO EXCLUDE OPINION TESTIMONY OF DR. FITZGERALD.

Dr. Fitzgerald was not the type of witness from whom an expert report is required under Rule 26 (a)(2)(B). That section of the Federal Rules of Civil Procedure applies only to those experts who have been "retained or specially employed to give expert testimony in the case." Dr. Fitzgerald was never retained nor specially employed by Mr. Hamburger or his counsel to provide expert testimony. Moreover, State Farm solicited Dr. Fitzgerald's opinion. State Farm not only knew of Dr. Fitzgerald and had copies of all of her records, but also had submitted a

deposition by written question to Dr. Fitzgerald on April 18th, 2002 in which Dr. Fitzgerald was asked about causation.

The local rules of the United States District Court for the Southern District of Texas do not modify, limit, or expand on Fed. R. Civ. P. 26 (a)(2)(B), nor the comments by the Advisory Committee. The Advisory Committee Notes for Fed. R. Civ. P. 26 (a)(2)(B), explains that a treating physician may testify without the need of producing an expert report.

> A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.[9]

In *Battle v. Memorial Hospital at Gulfport*,[10] this Court on a related issue, referencing the Advisory Committee Notes under Rule 26 (b)(4)(A), noted that for purposes of Rule 26 analysis "an expert who was an 'actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit' is to be treated as an ordinary witness."[11]  Other Circuit Courts of Appeal and numerous District Courts have held that a treating physician opinions as to causation are a necessary part of the treatment of the patient, and as such, expert reports are not

---

[9]    *Advisory Committee Notes, Rule 26, paragraph (2).*  Federal Civil Procedure and Rules, 2002 Edition. West Group.  p. 153.

[10]    228 F. 3d 544 (5 Cir. 2000).

[11]    *Id.* at 552.

required under Rule 26 (a)(2)(B).[12]

Moreover, should it be determined that in this Circuit or in the Southern District of Texas, as to causation, a treating physician is considered as being "retained or specially employed to give expert testimony" and therefore must be timely identified and an expert report produced, appellant submits that under the circumstances of this case granting his motion for a continuance was the preferred method of dealing with Dr. Fitzgerald opinion on causation. The trial court's ruling was a *de facto* dismissal of plaintiff's claim for damages sustained because of the herniated disc he suffered.

The lower court should have considered the four factors this Court set forth in *Bradley v. United States*.[13] Such an analysis demonstrates that excluding the testimony of Dr. Fitzgerald, essentially striking plaintiff's claim, was an abuse of discretion. The result of doing so to plaintiff was extremely severe, while State Farm would not have been prejudiced by allowing Dr. Fitzgerald to testify since it was

---

[12]    See *Davoll v. Webb*, 194 F.3d 1116 (10 Cir. 1999); *Hawkins v. Graceland,* 210 F.R.D. 210 (W.D. Tenn 2002),   208 F.R.D. 236 (U.S.D.C. Ill. 2002), *Brown v. Best Foods, A Div. Of CPC International, Inc.*, 169 F.R.D. 385 (N.D. Ala. 1996), *Mangla v. University of Rochester*, 168 F.R.D. 137 (W.D. N.Y. 1996), and *Salas v. United States*, 165 F.R.D. 31 (W.D. N.Y. 1995).  Counsel has not found any reported decisions by the Southern District of Texas that have been presented with this precise issue.

[13]    866 F.2d 120, at 125 (5 Cir. 1989).  See *EEOC v. General Dynamics Corp.,* 999 F. 2d 113 (5 Cir. 1993); *Campbell v. Keystone Aerial Surveys*, 138 F. 3d 996 (5 Cir. 1998).

prepared to address her opinion with expert testimony. Besides, a continuance would have cured any possible prejudice State Farm may have conceivably incurred. More importantly, Mr. Hamburger's reason for failing to identify Dr. Fitzgerald and producing an expert report was based on a point of law supported by the language of Rule 26(a)(2)(B)'s Advisory Committee Notes and several decisions in other jurisdictions, with no contrary published decisions in the District Court or its local rules.

LAY TESTIMONY IS ADEQUATE TO ESTABLISH CAUSE OF PLAINTIFF'S HERNIATED DISC.

In a personal injury case, a plaintiff must establish a causal nexus between the event and plaintiff's injuries. Under Texas jurisprudence lay testimony can provide both legally and factually sufficient evidence to prove causal relationship between an event and the plaintiff's injuries.[14] Lay testimony establishing a sequence of events which provide a strong, logically traceable condition between the event and the plaintiff's injuries is sufficient proof of causation to submit the issue to the jury.[15]

Mr. and Mrs. Hamburger both testified that prior to the accident the Mr. Hamburger never had any problems with his neck. From the date of the accident until

---

[14]     *Blankenship v. Mirick* 984 S.W.2d 771, 775 (Tex. App - Waco 1999).

[15]     *Morgan v. Compugraphic Corp.*, 675 S.W. 2d 729, 731. (Tex. 1984); *Maritime Overseas Corp. v. Ellis* 886 S.W. 2d 780, 791 (Tex. App. Houston 1994); *Blankenship v. Mirick* 984 S.W.2d 771 (Tex. App - Waco 1999).

he finally underwent surgery, their uncontradicted testimony was that the pain worsened and progressed and began shooting down his arm. There was no intervening event. He could not get any relief until Dr. Fitzgerald finally performed surgery. Dr. Parr testified that an automobile accident could cause Mr. Hamburger's injuries. Dr. Fitzgerald testified that Mr. Hamburger's problems which necessitated the surgery was not because of degenerative changes in his spine, but rather a herniated disk.

Taken as a whole, the testimony established a sequence of events which provided a strong, logically traceable condition between the accident and the Mr. Hamburger's injuries. This was legally sufficient evidence to submit the issue of causation to the jury. It was error for the trial court to take this issue from the jury and rule, "as a matter of law" that Mr. Hamburger's herniated disc was not caused by the accident.

OFFSET OF PIP PAYMENTS WAS INAPPROPRIATE UNDER THE CIRCUMSTANCES.

The trial court instructed the jury not to return any damages as a result of the Mr. Hamburger's herniated disc or resultant surgery. As such, the entire award was simply for pain and suffering for a soft tissue injury suffered by Mr. Hamburger as a result of the automobile accident. The PIP benefits paid in this case were only for medical expenses incurred as a result of the herniated disc. No other medical cost

were either generated or submitted.  If State Farm paid PIP benefits, but later wants to claim the payments were erroneously made, Mr. Hamburger should not be made to suffer or be prejudiced by State Farm's conduct or "erroneous" decisions.  Mr. Hamburger's award for soft tissue injury that did not result in any medical costs, as far as State Farm was concerned, should not be reduced beyond payments made by the original tortfeasor's insurer.

# ARGUMENT

## I. GRANTING OF PARTIAL SUMMARY JUDGMENT WAS ERROR.

### A. ABUSE OF DISCRETION TO GRANT PARTIAL SUMMARY JUDGMENT WITHOUT AFFORDING PLAINTIFF NEEDED AND REQUESTED DISCOVERY.

*Standard of Review*

This Court reviews a lower court's decision to cut off discovery in order to rule on summary judgment for an abuse of discretion.[16]

*Law and Argument*

Under Texas law, a duty is owed on the part of the insurer to deal fairly and in good faith in the processing of claims.[17] A breach of this duty exists when the insurer has no reasonable basis for denying ***or delaying payment*** of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial.[18] The Texas Supreme Court has held that an insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has

---

[16] *Brown v. Mississippi Valley State University*, 311 F.3d 328, 332-333, (5th Cir. 2002).

[17] *Higginbotham v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 456, 460 (5th Cir. 1997) citing *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165, 167 (Tex. 1987).

[18] *Id.*

become reasonably clear.[19] However, "an insurer cannot insulate itself from liability by investigating a claim in a manner calculated to construct a pretexual basis for liability."[20] Thus, the focus of a bad faith inquiry is on the reasonableness of the ***insurer's conduct*** in rejecting or delaying payment of the claim, ***which is determined by viewing the facts available to the insurer at the time of denial***.[21] Requests for Production of Documents and by deposition is a valid and often essential manner to discover the insured's conduct and the facts available to it at the time of denial.

When such discovery is pending, and being resisted by the insurer, summary judgment on issues of the insured's conduct and motivation is inappropriate. If a party is not given a full and fair opportunity to discover information essential to its opposition to summary judgment, especially when the information is within the sole possession of the movant, a limitation on discovery is reversible error.

Summary judgment assumes that at least the opportunity to conduct some discovery was afforded the opposing party.[22] "It is appropriate if, *after discovery*,

---

[19]  *Universe Life Insurance Co. v. Giles* 950 S.W. 2d 48, 56 (Tex. 1997).

[20]  *State Farm Fire and Casualty v. Simmons*

[21]  *King v. State Farm Mutual Automobile Insurance Company*, 2001 WL 694576, p. 2 (N.D. Tex. 2001).

[22]  *Brown v. Mississippi Valley State University*, 311 F.3d at 333.

there is no genuine dispute over any material fact."[23]  In *Brown*, this Court reasoned

that the "Supreme Court has stated that summary judgment should be entered against

a plaintiff who does not raise a genuine issue of material fact 'even where the

evidence is likely to be within the possession of the defendant, ***as long as the plaintiff***

***has had a full opportunity to conduct discovery*.'"[24]

In *Fontenot v Upjohn Co.*, this Court wrote:

> If, however, it is evident that the party seeking summary judgment
> against one who bears the proof burden has no access to evidence of
> disproof, ***and ample time has been allowed for discovery***, he should be
> permitted, as Upjohn did here, to rely upon the complete absence of
> proof of an essential element of the other party's case.
>
>             \* \* \*
>
> Absent evidence, direct, circumstantial, or inferential, that would create
> a genuine issue of fact, ***and absent any suggestion concerning the***
> ***utility of additional time for further discovery***, the motion should be
> granted."[25]

A district court may cut off discovery when the record shows that further

discovery is not likely to produce the facts needed to withstand the motion for

summary judgment.[26]  However, when the district court does not give a party ***"a full***

---

[23]     *Id.*, quoting *F.D.I.C. v. Shrader & York*, 991 F.2d 216, 220 (5th Cir. 1993).

[24]     *Brown v. Mississippi Valley State University*, 311 F.3d at 333, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  (Emphasis added in *Brown*).

[25]     *Fontenot v. Upjohn*, 780 F.2d 1190, 1195-1196 (5th Cir. 1986).

[26]     *Brown* at 333, citing *Washington v. Allstate Insurance Co.*, 901 F.2d 1281, 1285 (5th Cir. 1990).

***and fair opportunity to discover information essential to its opposition to summary judgment, the limitation on discovery is reversible error.***"[27]

At the hearing on Mr. Hamburger's Motion to Reconsider the granting of partial summary judgment, the magistrate judge recognized that Mr. Hamburger's attempts to depose the State Farm representatives who could have created an issue of fact were within the established discovery deadlines, but should have done so "a lot earlier." She summarily dismissed Mr. Hamburger's extra-contractual claims simply because she felt that he had not filed his motion to compel discovery immediately after State Farm had filed its motion for summary judgment—not considering that he tried to depose the pertinent State Farm representatives and to obtain written discovery well within the deadline established by the Docket Control Order. (R. Vol.2 p.55-54).

This attempted discovery was in response to and not long after State Farm filed its motion for partial summary judgment. Had State Farm not resisted these discovery attempts, Mr. Hamburger would have received the requested materials by May 15th, 2002, and deposed State Farm's representatives sufficiently in advance of the ruling on their motion to provide the trial court with evidence of defendant's violations of

---

[27]     *Id.* quoting *Access Telecom, Inc. v. MCI Telecomm. Corp.*, 197 F.3d 694, 720 (5th Cir. 1999).

the Texas DTPA and the Texas Insurance Code.

In *International Shortstop, Inc. v. Rally's, Inc.*,[28] this Court vacated a district court's order granting summary judgment. The issue was whether the district court should have allowed Shortstop to complete discovery before ruling on Rally's motion for summary judgment. Rally's had filed a lawsuit which Shortstop claimed was filed in bad faith, constituting a tortious interference with an agreement between Shortstop and Al Copeland. The trial court had set a discovery deadline of August 13th, 1990. Not quite two months prior to that deadline, Rally's moved for summary judgment. It argued that it had an absolute right to file a lawsuit, and as such, the lawsuit could not form the basis of a claim for tortious interference. Shortstop responded, indicating in a footnote that several depositions were still pending.

Also, Shortstop sought disclosure of information from Rally's regarding the lawsuit so as to establish bad faith. As State Farm has done herein, Rally's refused to provide information claiming attorney-client and work product privileges—much more than what State Farm asserts here, i.e. that the materials sought were irrelevant. Shortstop moved to compel the discovery. The magistrate judge assigned to the case granted Shortstop's Motion to Compel three days before the discovery cut off—and ordered that the discovery proceed.

---

[28]     939 F.2d 1257, (5th Cir. 1991).

Shortstop had not completed the necessary discovery by the cut off date, so it filed a motion to extend the discovery. Four days later, it asked the district court to again extend the discovery deadline and informed it of the proceedings before the magistrate judge. Rally's moved the district court to review the magistrate judge's original discovery order. The district court did not rule on any of these discovery issues, and instead, without any reference to the discovery requests, found that as a matter of law Rally's had a right to file its lawsuit, and thus vitiated Shortstop's tortious interference claim entirely. Shortstop appealed arguing that the trial court erred by failing to permit the additional discovery which could have elicited evidence undermining Rally's privilege.

This Court, after a thorough analysis of summary judgment procedure and guided by the U.S. Supreme Court's decisions in *Celotex Corp. v. Catrett*,[29] and *Anderson v. Liberty Lobby, Inc.*,[30] ruled "that the district court...should have deferred ruling on the motion for summary judgment ***until the necessary discovery was complete***."[31]

Particularly, this Court considered the issue of whether Shortstop had been

---

[29]    477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

[30]    477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

[31]    *International Shortstop, Inc. v. Rally's*, 939 F.2d 1257, 1267 (5th Cir. 1991).

diligent in its pursuit to discover evidence from Rally's.  This Court indicated that when more time is needed to obtain discovery to respond satisfactorily to a motion for summary judgment, a party can seek shelter under FRCP Rule 56(f).  When Rule 56(f) has not been properly invoked—and most importantly herein—this Court held that discovery requests that fail to meet Rule 56(f)'s "precise measurements [do] not necessarily foreclose the court's consideration of the request."[32]  While, the preferred method is to present an affidavit in support of the requested continuance; nevertheless, *a nonmoving party is deemed to have invoked the rule* if it indicates to the court by "some equivalent statement, preferably in writing" of the need for additional discovery.[33]

In the present case, Mr. Hamburger was diligent in his pursuit to obtain discovery from State Farm.  He sought to depose State Farm's representatives well within the discovery deadline established by the Docket Control Order and not long after State Farm moved for partial summary judgment.  State Farm refused Mr. Hamburger's well founded discovery requests, necessitating a Motion to Compel.  Mr. Hamburger timely sought the lower court's assistance in obtaining discovery and did so following the proper rules of procedure.  He should not be penalized for State

---

[32]     *International Shortstop, Inc.* at 1267.

[33]     *Id.* at 1266-1267, quoting *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

Farm's resistance to discovery and the time necessary to follow the procedural requirements to obtain judicial intervention.

It was State FArm's *conduct* that was at issue on the extra-contractual claims, and the evidence of its conduct was within its sole possession. Faced with a motion for partial summary judgment, and with only a letter that gave no reasonable basis for its denial of payment, Mr. Hamburger was left with the only logical step to take— conduct written discovery and depose the State Farm representatives who handled his claim. When State Farm resisted, Mr. Hamburger took the next and only available step—seek the court's assistance in compelling discovery.

Rather than address Mr. Hamburger's Motion to Compel and order the discovery needed to resist defendant's motion, the magistrate entered into an exercise of circuitous logic that prevented Mr. Hamburger from obtaining the needed discovery, notwithstanding that Mr. Hamburger was well within the deadlines established by the Docket Control Order. Essentially, the magistrate granted State Farm's motion for partial summary judgment in a vacuum and then denied Mr. Hamburger the means by which to obtain the evidence needed by the court to properly decide State Farm's motion. Then, because the court had decided to grant State Farm's motion, which then rendered the need for any discovery moot, there was no evidence in opposition to the motion, which then in turn supported the decision to

grant State Farm's motion in the first place.

In the case *sub judice*, Mr. Hamburger did not just casually say that discovery was incomplete. He moved the court to **compel** State Farm to produce its representatives and to provide the requested documents so that he could obtain information that would lead to the discovery of admissible evidence. Much of this information was not just in the hands of these representatives but also in their heads. Mr. Hamburger was seeking to discover why they had denied the UM claim and what steps they had taken in reaching a denial.

The lower court did not afford him the opportunity to discover from State Farm and its representatives the evidence to establish that their liability had become reasonably clear, that their conduct was merely developing a pretexual basis for their intended denial, and that they failed to timely and in good faith settle Mr. Hamburger's claim. Granting a motion for partial summary judgment without affording Mr. Hamburger this discovery was an abuse of discretion.

B. QUESTIONS OF MATERIAL FACTS EXISTED WHICH PRECLUDED A MOTION FOR PARTIAL SUMMARY JUDGMENT

*Standard of Review*

This Court reviews a granting of summary judgment *de novo*.

*Law and Argument*

Rule 56(c) provides in pertinent part that "[t]he judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[34] The principal function of the motion for summary judgment is to show that, ***in the absence of factual disputes***, one or more of the essential elements of a claim or defense before the court ***is not in doubt*** and that, as a result, judgment should be entered on the basis of purely legal considerations.[35]

The pleadings on file, Mr. Hamburger's petition, State Farm's answer, the exhibits to State Farm's motion, along with Mr. Hamburger's opposition memorandum and its attached exhibit established the following. 1) Mr. Hamburger had been in an automobile accident with an under insured motorist on July 26th, 1999;

---

[34] Rule 56(c) Federal Rules of Civil Procedure.

[35] *Fontenot v Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). (Emphasis added).

-40-

2) State Farm provided PIP coverage and UM coverage; 3) Mr. Hamburger had provided medical expenses resulting in a cervical disectomy that exceeded $18,000, claiming the expenses were caused by that automobile accident; 4) State Farm admitted paying in February of 2002, the limits of PIP coverage, effectively determining that the surgery and medical expense for the herniated disc was caused by the automobile accident; 5) well over four months later State Farm denied Mr. Hamburger's UM claim, contending that $35,000 was sufficient; 6) Mr. Hamburger felt that State Farm had misled him by its conduct in paying the PIP benefits and never questioning causation, 7) State Farm gave no reason for its determination that a herniated disc, resultant surgery and expenses in excess of $18,000, and four months of pain and suffering was only worth a total of $35,000; 8) State Farm failed to follow its own policy guidelines for denying a claim.

The Texas Supreme Court in *State Farm Fire & Casualty v. Simmons*, reaffirmed the standard for recovery in bad faith cases it had established in *Universe Life Insurance Company, supra* at 56, that "an insurer breaches its duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear." The Texas Supreme Court in *State Farm Fire & Casualty v. Simmons* continued that ***"an insurer cannot insulate itself from bad faith liability by investigating a claim in a manner calculated to construct a pretextual basis for***

*denial."* The Texas Supreme court also noted "*As State Farm conceded at oral argument, whether an insurer has breached its duty of good faith and fair dealing is a fact issue.*"

The pleadings, together with the exhibits on file, and the memorandum in opposition demonstrated that State Farm had made a determination under its policy that PIP benefits were due and payable. *No evidence was introduced at this stage that it had mistakenly or unintentionally or improperly paid these PIP benefits*. The policy introduced by State Farm demonstrated that PIP benefits are only due if it is determined that the medical expenses were caused by the accident. As such, the pleadings and exhibits on file demonstrated only that State Farm conceded that the accident caused Mr. Hamburger's herniated disc and the resultant surgery.

The pleadings on file and exhibits demonstrated that the medical expenses exceeded $18,000. The pleadings and exhibits demonstrated that the reason for the surgery was a herniated disc. The pleadings and exhibits demonstrated that Mr. Hamburger was in pain for four months before undergoing surgery. Lastly, the evidence demonstrated that the only basis for denying Mr. Hamburger's claim was that State Farm decided, without giving any explanation why, that $35,000 was a sufficient amount of money for those injuries and damages. Such an outlandishly low evaluation, on its face, shows that State Farm's denial of Mr. Hamburger's UM claim

was merely a pretext, and that it had no valid reason for denying Mr. Hamburger's claim.

*Shortstop, supra,* is on point. This Court faced a movant who asserted an affirmative defense, i.e., that it filed a lawsuit in good faith, and thus bore the burden at trial. This Court found that the defendant's state of mind was obviously the key to its claimed defense. This Court stated in pertinent part:

> ***When state of mind is an essential element of the nonmoving party's claim, it is less fashionable to grant summary judgment because a party's state of mind is inherently a question of fact which turns on credibility.*** Credibility determinations, of course, are within the province of the fact-finder. ***Accordingly, we have emphasized repeatedly that cases which turn on the moving party's state of mind are not well-suited for summary judgment.*** *Ross v. John's Bargain Stores Corp.,* 464 F.2d 111, 115 (5th Cir.1972); *Jones v. Borden Co.,* 430 F.2d 568, 574 (5th Cir.1970); *Riley-Stabler Constr. Co. v. Westinghouse Elec. Corp.,* 401 F.2d 526, 527 (5th Cir.1968); *accord Miller v. FDIC,* 906 F.2d 972, 974 (4th Cir.1990) ("general rule that summary judgment is seldom appropriate in cases wherein particular states of mind are decisive elements of a claim or defense"); *Wilson v. Seiter,* 893 F.2d 861, 866 (6th Cir.1990) ("We are aware that state of mind is typically not a proper issue for resolution on summary judgment."), *vacated on other grounds,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991); *National Union Fire Ins. Co. v. Turtur,* 892 F.2d 199 (2d Cir.1989) ("Questions of intent, we note, are usually inappropriate for disposition on summary judgment"). ***This is so because it is particularly difficult for the nonmoving party to challenge the "self-serving testimony" of the moving party without the benefit of trial accessories, namely cross-examination.*** *See 60 Ivy Street Corp. v. Alexander,* 822 F.2d 1432 (6th Cir.1987) (observing that "the likelihood of self-serving testimony and the necessity for the fact-finder's credibility determinations" make

summary judgment inappropriate when state of mind is at issue). [36]

Besides, State Farm's defense that there was a *bona fide* dispute, is a burden it would have at trial. Its characterization of the dispute as *bona fide* is insufficient to obtain a summary judgment on that point, especially when, the only thing established by the pleadings at the time was that it had determined that the accident caused Mr. Hamburger's herniated disc and need for surgery. As this Court has recognized, summary judgment is rarely appropriate when state of mind is at issue, **and it is even less fashionable when the moving party bears the burden of proving its own state of mind.** [37]

The fact that the real motivation for State Farm's decision lay solely within its records and the conduct of its representatives does not mean that there are undisputed facts. The facts, as admitted in the pleadings of state Farm and the correspondence of July 30th, 2002, demonstrate that serious and material facts were in dispute. It was improper to dismiss Mr. Hamburger's allegations of bad faith on a summary judgment.

Under Texas law, an insurer processing a claim has a duty to deal fairly and

---

[36]    *International Shortstop, Inc.* at 1265-1266.

[37]    *Id.* at 1266, footnote number 8.

in good faith with an insured.[38]  A cause of action for a breach of this duty exists "when the insurer has *no reasonable basis* for denying or delaying payment of a claim or when the insurer fails to determine or delays in determining whether there is any reasonable basis for denial."[39]  In the present case, State Farm hid behind one statement—"We feel that $35,000.00 is adequate compensation for Mr. Hamburger's claim."  This self-serving, conclusional statement simply begs the question as to why they denied Mr. Hamburger's UM claim.  Particularly, when State Farm had been furnished with all Mr. Hamburger's medical records and treatment and agreed that they were caused by the accident in question.

II. ABUSE OF DISCRETION TO EXCLUDE OPINION TESTIMONY OF DR. FITZGERALD.

*STANDARD OF REVIEW.*

This Court reviews the exclusion of a witnesses testimony for failure to comply with a scheduling order for an abuse of discretion.

At the hearing on State Farm's motion, the trial court was informed that State Farm had copies of all of Dr. Fitzgerald's records and operative report, and that Mr. Hamburger's counsel did not believe that a treating physician was the type of witness

---

[38]     *Higginbotham v. State Farm Mutual Automobile Insurance Company*, 103 F.3d 456, 459 (5th Cir. 1997) citing *Arnold v. National County Mutual Fire Insurance Company*, 725 S.W.2d 165, 167 (Tex. 1987).

[39]     *Higginbotham* at 459.  (Emphasis in original).

from whom an expert report was necessary. (R. Vol. 4, p. 9:11-16). Still, the trial court excluded Dr. Lynn Fitzgerald from testifying that in her opinion the automobile accident caused the condition which necessitated the surgery she performed on Mr. Hamburger.[40] The trial court stated that "State Farms have been given nothing to put them on notice, as far as who's going to be giving an opinion on causation. You're out of time and there is nothing turned over that even purports to be an expert report." (R. Vol. 4, p. 10:15-18).

The Docket control Order only required the "identification of plaintiff's experts and production of experts' reports in the form *required by Fed. R. Civ. P. 26 (a) (2) (B).*" (R. Vol. 2, p. 55, emphasis added). This Rule, Fed. R. Civ. P. 26 (a) (2) (B), provides that the disclosure of the identity of persons who may be used to present evidence under Rules 702, 703, or 705, "shall, *with respect to a witness who is retained or specially employed to provide expert testimony* in the case . . . be accompanied by a written report prepared and signed by the witness." The Advisory Committee Notes explains that the rule was thus phrased so as to only apply to experts who were specially employed or retained for the purpose of giving expert testimony, and not to experts such as treating physicians who were not retained by the

---

[40] Dr. Fitzgerald's testimony was proffered in the form of her answers to the deposition by written questions propounded by State Farm. (R. Proffer no. 1; Vol. 5, p. 79:1-19).

party to testify.  The Advisory Committee Notes  for Fed. R. Civ. P. 26 (a) (2) (B), provide in pertinent part:

> The requirement of a written report in paragraph (2) (B), however, only applies to those experts who are retained or specially employed to provide such testimony in the case or whose duties as an employee of a party regularly involve the giving of such testimony.  *A treating physician, for example, can be deposed or called to testify at trial without any requirement for a written report.*
> *Advisory Committee Notes, Rule 26, paragraph (2).*  Federal Civil Procedure and Rules, 2002 Edition. West Group.  p. 153.  Emphasis added.

The Local Rules of the United States District Court for the Southern District of Texas do not limit, expand, or modify Rule 26 (a)(2)(B) or the Notes of the Advisory Committee in any manner.   Dr. Fitzgerald not being retained or employed for the purpose of giving expert testimony, but rather, simply being Mr. Hamburger's treating physician, should not be required to provide an expert report as a condition precedent to testifying as to any opinion based on her treatment and surgery of Mr. Hamburger.

This issue of whether an expert report of a treating physician must be produced was addressed by the United States Court of Appeals for the Tenth Circuit in *Davoll v. Webb.*[41]  It specifically held that:

A treating physician is not considered an expert witness if he or she

---

[41]      194 F.3d 1116 (10 Cir. 1999).

testifies about observations based on personal knowledge, including the treatment of the party. *See Richardson v. Consolidated Rail Corp.,* 17 F.3r 213, 218 (7th Cir. 1994); *see also* Fed. R. Civ. P. 26(a)(2) advisory committee's notes (1998) (distinguishing between treating physicians and retained experts); *cf Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir. 1993) (treating physicians' opinions on industry standard of care constituted classic expert testimony). A treating physician, even when testifying as a lay witness, may state "expert" facts to the jury in order to explain his testimony. [citations omitted] In addition "a lay witness may testify as to any opinion '(a) rationally based on perception of the witness and (b) helpful to a clear understanding . . . of a fact in issue.'"[42]

This Court in *Battle v. Memorial Hospital at Gulfport*,[43] referencing the Advisory Committee Notes under Rule 26 (b)(4)(A) on a somewhat related issue, noted that for purposes of a Rule 26 analysis "an expert who was an 'actor or viewer with respect to transactions or occurrences that are part of the subject matter of the lawsuit' is to be treated as an ordinary witness." This Court went on to hold that a treating physician, "because he was a fact witness as well as an expert, must be treated as an ordinary witness for purposes of Rule 26 analysis".[44]

Other Circuit Courts of Appeal and numerous District Courts have held that a treating physician opinions as to causation are a necessary part of the treatment of the patient, and as such, expert reports are not required under Rule 26 (a)(2)(B). In *Salas*

---

[42]  *Davoll v. Webb*, *supra* at 1138.

[43]  228 F. 3d 544 (5 Cir. 2000).

[44]  *Supra* at 552.

*v. United States*,[45] the Magistrate Judge holding that a treating physician need not provide an expert report noted:

> As a general rule, a treating physician considers not just the plaintiff's diagnosis and prognosis, but also the cause of the plaintiff's injuries. In this case, there is no indication that these treating physicians reviewed any medical records other than those involved in their care and treatment of the patient. Plaintiff is not asking these doctors to comment upon or review the opinions of of other doctors. Each of these physicians in fact treated the plaintiff in the area of their specialty. Accordingly, questioning these physicians as to whether the injuries for which they treated the plaintiff can be causally related to the accident would appear to be within the scope of the patient's care and treatment.[46]

In *Brown v. Best Foods, A Div. Of CPC International, Inc.*,[47] the Senior district Judge, building upon this Court's early decision of *McGuire v. Davis*[48] ruled that a treating physician's "opinion as to the cause of the plaintiff's injuries do not require a written report if based on their examination or treatment of the patient."[49]

Dr. Fitzgerald was not "retained or specially retained to provide expert testimony." Mr. Hamburger's counsel did not retain Dr. Fitzgerald or even refer Mr.

---

[45]     165 F.R.D. 31 (W.D. N.Y. 1995).

[46]     *Supra* at 33.

[47]     169 F.R.D. 385 (N.D. Ala. 1996).

[48]     437 F.2d 570, 572 (5 Cir. 1971).

[49]     *Supra* at 389. See also *Hawkins v. Graceland,* 210 F.R.D. 210 (W.D. Tenn 2002), 208 F.R.D. 236 (U.S.D.C. Ill. 2002), *Mangla v. University of Rochester*, 168 F.R.D. 137 (W.D. N.Y. 1996).

Hamburger to see Dr. Fitzgerald. Mr. Hamburger and his wife settled upon Dr. Fitzgerald. Neither Mr. Hamburger nor his counsel had any control over Dr. Fitzgerald. His counsel could do no more than State Farm did, subpoena her to testify. She was the surgeon who treated and performed the Mr. Hamburger's disectomy. Dr. Fitzgerald was not going to testify as to any other physician's records or opinions, but rather her opinion based on her treatment of and surgery she performed on Mr. Hamburger. Her opinion as to causation is a natural part of her treatment of Mr. Hamburger and what she observed during surgery. She should not be required to furnish a written report as a condition precedent to so testifying.

Alternatively, should it be determined that in this Circuit or in the Southern District of Texas, as to causation, a treating physician is considered as being "retained or specially employed to give expert testimony" and therefore must be timely identified and an expert report produced, Mr. Hamburger submits that under the circumstances of this case, granting Mr. Hamburger's motion for a continuance was the preferred method of dealing with Dr. Fitzgerald opinion on causation. The trial court's ruling was a *de facto* dismissal of Mr. Hamburger's claim for damages sustained because of the herniated disc and should only be a sanction of last resort.

The lower court should have considered the four factors this Court set forth in

*Bradley v. United States*.[50] An analysis of the four factors in *Bradley* demonstrate that 1) Dr. Fitzgerald's testimony was extremely important to Mr. Hamburger, especially in light of the lower court's determination as a matter of law that Mr. Hamburger did not prove his herniated disc was caused by the accident; 2) State Farm would not have been prejudiced by allowing Dr. Fitzgerald to so testify, as it had already retained an expert witness to counter Dr. Fitzgerald's opinion; 3) any possible prejudice could have been remedied by a continuance, and 4) with no local rule modifying or limiting the guidance provided by the Advisory Committee Notes to Rule 26 (a)(2)(B), Mr. Hamburger's counsel was justified believing that Dr. Fitzgerald, as a treating physician, need not be timely identified as an expert witness or required to furnish an expert report.

Dr. Fitzgerald's identity was provided to State Farm in the initial disclosures. Her records were furnished to State Farm, and then later obtained again by defense counsel through a deposition by written question. Dr. Fitzgerald was thereafter listed as an expert witness by **State Farm**. On April 18th, 2002, State Farm submitted a deposition by written question to Dr. Fitzgerald in which her opinion as to causation was solicited.

---

[50] 866 F.2d 120, at 125 (5 Cir. 1989). See *EEOC v. General Dynamics Corp.,* 999 F. 2d 113 (5 Cir. 1993); *Campbell v. Keystone Aerial Surveys*, 138 F. 3d 996 (5 Cir. 1998).

State Farm obviously anticipated Dr. Fitzgerald's opinion, since it had retained Dr. Steiner in October of 2001 to review Dr. Fitzgerald's records and operative report and render an opinion that the automobile accident was not the cause of Mr. Hamburger's condition. State Farm was not prejudiced in any manner, since it had already developed expert testimony to counter Dr. Fitzgerald's anticipated opinion. State Farm actually knew Dr. Fitzgerald's opinion at least three weeks prior to trial when Dr. Fitzgerald finally responded to its deposition by written questions. As such Dr. Fitzgerald's testimony was of no surprise and State Farm had ample time to further develop any testimony it felt may have been needed from Dr. Steiner. If State Farm needed more time, then a continuance would have been in order. The case had not been continued before, and a continuance of even two months would not have prejudiced State Farm. Rather, it was Mr. Hamburger who was severely prejudiced, by stripping him of Dr. Fitzgerald's opinion as what caused Mr. Hamburger's condition, which in turned caused the lower court to grant a judgment as a matter of law on medical causation.

Lastly, the failure to identify Dr. Fitzgerald as an expert witness before State Farm did and the lack of obtaining an expert report was not a willful violation of the District Court's Civil Docket Order. It was based on a good faith belief, substantiated by the wording of Rule 26 (a)(2)(B), and the Advisory Committee Notes, that no

expert report was required.  This belief is supported by the decisions of other federal courts and by a good faith interpretation of the holdings of this Court.

Under all the circumstances, it was an abuse of discretion for the lower court to exclude Dr. Fitzgerald from testifying as to her opinion as to the cause of Mr. Hamburger's herniated disc.

III. LAY TESTIMONY WAS ADEQUATE TO ESTABLISH CAUSE OF PLAINTIFF'S HERNIATED DISC.

*Standard of Review*

This Court examines the granting of a judgement as a matter of law *de novo*.

*Law and Argument*

The trial court erred when it granted State Farm's motion for judgment as a matter of law as to causation.

"The causal nexus between the event sued upon and the plaintiff's injuries must be shown by competent evidence."[51]  Expert testimony is but only one of several ways to prove proximate cause.[52]  Texas jurisprudence provides that lay testimony can also adequately prove this nexus.  A layman can show causation when ***general experience and common sense will enable him/her fairly to determine the causal nexus***.[53]

---

[51]    *Morgan v. Compugraphic Corp.*, 675 S.W.2d 729, 732 (Tex. 1984).

[52]    *Blankenship v. Mirick,* 984 S.W.2d at 775.

[53]    *Id.* citing *Morgan v. Compugraphic Corp.*

Sufficient proof of causation exists when the lay witness' testimony establishes a sequence of events which provides a strong, logically traceable connection between the event and the condition.[54] "In such cases, lay testimony can provide both legally and factually sufficient evidence to prove the causal relationship."

In *Blankenship v. Mirick,*[55] the appellate court, relying heavily on *Morgan v. Compugraphic Corp.*,[56] found that the plaintiff's testimony had established "***a sequence of events which provides a strong, logically traceable connection between the [collision] and [her] condition" and that this constituted "more than a scintilla" of evidence of causation.***[57] The plaintiff suffered knee injuries after an automobile collision. She went to the emergency room, and a physician stitched a two-inch laceration across her left knee. X-rays revealed no abnormalities. She returned three days later for a follow up exam. On her return, she stated that her left knee bothered her when she bent or extended it. She was given pain medication and was told to follow up with an orthopedist if her symptoms did not improve. The physician noted a "possible chondromalacia left knee." Approximately two weeks later, she saw an

---

[54]     *Id.*

[55]     984 S.W.2d 771, (Ct.App.–Waco, 1999).

[56]     675 S.W.2d 729 (Tex. 1984).

[57]     *Blankenship v. Mirick* at 776.  (Emphasis added).

orthopedist and reported pain on both knees. The doctor diagnosed her with a bruising of the cartilage beneath the kneecap. He recommended rest and instructed plaintiff to do certain exercises to build up muscle. He also prescribed anti-inflammatory medication. Two weeks later, he released plaintiff to return to work without limitation.

Ten months later, she returned to the orthopedist "because the pain had just got so bad." X-rays revealed that her kneecaps had shifted from their normal positions. She was given a conservative treatment regimen that included the prior exercises and medication. She continued this treatment for five months and then began to experience increasing pain in both knees. The orthopedist operated her left knee, believing it was more symptomatic. He also operated on the right knee because she began to have significant symptoms.

At trial, both plaintiff and her husband testified that she had experienced no problems with her knees before the collision. Her doctor, when asked whether the collision caused the injuries, answered that he didn't believe so. He could not really say one way or the other in reasonable medical probability that there was a greater possibility that the plaintiff's condition was caused by the trauma of the collision or a preexisting condition. He felt that she either may have already had a congenital condition that placed her kneecap out of position and that the accident may have

worsened or that she may have just not exercised the knee enough and allowed those muscles to weaken, allowing the kneecap to slide. Even so, the Texas Court of Appeals determined that the lay testimony of the plaintiff was legally sufficient to support the jury's determination of causation.

In *Cities Service Company v. Ellison*,[58] the defendant alleged that there was no connection between plaintiff's physical problems and the accident which had occurred. Three persons testified—none were expert witnesses. The plaintiff testified about his hospitalization, what the doctors discovered and did, and what capabilities after the accident. His wife testified about his lack of sleep and eating problems. She also testified that he had to give up skating and riding horses. The third witness was a private rehabilitation counselor, who interpreted plaintiff's medical records. These documents included records from plaintiff's treating physicians. The appellate court found that:

> The testimony of the three witnesses, along with the medical records, constituted sufficient information to establish a causal connection between appellee's accident and his injuries. ***Appellant argues that medical testimony is needed in the instant case to establish a causal connection. Generally, lay testimony which establishes a sequence of events with a strong, logically traceable connection between the event and the condition is sufficient proof of causation.*** *Morgan v. Compugraphic Corp.,* 675 S.W.2d 729 (Tex.1984). It is true that medical testimony is required to prove the causal connection between

---

[58]     698 S.W.2d 387, 389 (Ct.App–Houston, 14th Dist, 1985).

accident and injury *when a layman cannot conclude with reasonable probability that the damages arose from the acts of the defendant*. *Sears, Roebuck & Co. v. Hurst,* 652 S.W.2d 563, 565 (Tex.App.-- Fort Worth 1983, writ ref'd n.r.e.).  However, in the instant case a layman could conclude with reasonable probability that the damages arose from appellant's negligence.

In *Weidner v. Sanchez*,[59] the appellate court found that the testimony of the plaintiff, and the testimony of the treatment given by her treating physician, was sufficient to establish medical causation, despite many other pre-existing problems of the plaintiff.

> Sanchez's and Avila's testimony provides a strong and logically traceable connection between the accident and Sanchez's injuries.   Although Sanchez suffered many other ailments, some of which may have caused her to experience neck and back pain, there is no evidence that she sought treatment from Parkway Hospital, the emergency room doctor, or Dr. Avila for any ailment other than the injury she sustained as a result of the accident.

> The evidence is also factually sufficient to support a causal link between the  accident and Sanchez's injuries.

In *City of Beaumont v. Gallien*,[60] much like in the present case, the defendant claimed that appellee failed to establish the necessary causal nexus to entitle plaintiff to recovery of damages.  Defendants argued that though they had stipulated to a causal nexus between the conduct and the event sued upon by plaintiff, that expert

---

[59]     14 SW3d 353, at  (Tex.App.-Houston [14 Dist.],2000).

[60]     949 S.W.2d 57 (Tex.App.-Beaumont,1997).

medical testimony was required to establish the nature of the injuries suffered by plaintiff. Disagreeing with the defendants, the Texas Court of Appeals held,

> Lay testimony is adequate to prove causation in those cases where general experience and common sense will enable a layman to determine, with reasonable probability, the causal relationship between the event and the condition; and where lay testimony establishes a sequence of events which provides a strong, logically traceable connection between the event and the condition, it is sufficient proof of causation.
>
> *   *   *
>
> The evidence in the record before us, both from medical evidence provided through records of the treating physician and the testimony of appellee and other lay witnesses, describe in detail the events from which the jury could properly infer that the automobile accident caused Gwen Gallien to suffer injuries. The evidence is clear that appellee sustained a head injury in the accident of April 30, 1991. There is abundant evidence that appellee continued to suffer pains in her head from the date of the accident through trial.

Herein, the testimony of Mr. Hamburger, his wife, and his treating physicians was legally and factually sufficient to establish that the automobile accident was the cause of the Mr. Hamburger's herniated disk. The testimony established a series of events that provided a strong, logically traceable connection between the automobile accident and the Mr. Hamburger's herniated disc.

First, Mr. Hamburger testified that prior to the accident, he had never had any problems with his neck. (Vol. 5, p.171:14-19.) He testified that between the time of the accident and his lawsuit nothing happened. In other words, there was no

intervening incident nor injury. (Vol. 5, p.171:20-22). He testified that upon impact he was pushed forward and that his head went forward and snapped back against the headrest; consequently, he felt a stiffness in his neck. (Vol. 5, p.161:6-13). He told the police officer who investigated the incident how his neck was feeling. (Vol. 5, p.161:19-23). The police officer offered an ambulance, but Mr. Hamburger declined. (Vol. 5, p.162:1-3). He reported the accident to State Farm immediately and informed them of his neck injury. (Vol. 5, p. 162:4-18). Mr. Hamburger testified that he "had pain in the neck and that continued for some time, never went away." "It just continued to be there, got progressively worse. And over the next couple of months, the pain seemed to progress from the neck to the shoulder, down my arm and to the hand." "I didn't have a day that I wasn't in agony". (Vol. 5, p.162:19-p.164:1).

Mrs. Hamburger also testified that her husband had never had problems with his neck before the accident. (Vol 6, p.49:13-15). She testified that after the accident, Mr. Hamburger's pain only got worse and worse. She explained that for her husband to have agreed to see a neurosurgeon then the pain had to have been bad. (Vol.6, p.50:1-4).

Doctor Lynn Fitzgerald testified that the pain that Mr. Hamburger was experiencing was caused by pressure on the nerve root from the disk at the 6-7 level, a different level altogether. (Vol. 5, p.92:17-p.93:1). She testified that it was the

herniated disc that was causing the Mr. Hamburger's problems, and not pre-existing degenerative changes in Mr. Hamburger's spine.

Doctor Thomas Parr testified that anything that would "***Cause the body to jerk in any direction suddenly***" could cause a herniated disc.  (Vol. 5, p.142:8-16) (Emphasis added.)

Under Texas law, a plaintiff's testimony can establish a legally sufficient nexus between an event and his injuries.  Such evidence can not only support a jury's finding of causation, but also is sufficient to allow the matter to go to the jury.  Here, at the very least, the jury should have been allowed to decide whether the testimony at trial showed the causal nexus between plaintiff's injuries and the automobile accident.

The lower court erred when it took this from the jury and granted State Farm's motion for judgment as a matter of law that the automobile accident did not cause the Mr. Hamburger's herniated disc.

IV. STATE FARM WAS NOT ENTITLED TO AN OFFSET

Mr. Hamburger had previously received a total of $35,000 in insurance payments on account of the accident.  Of this amount, $10,000 was paid to him by State Farm under the PIP coverage of his insurance policy.  The balance of $25,000 was paid to him by Old American County Mutual Fire Insurance Company.

In its motion to alter or amend, State Farm claims entitlement to a credit for the $10,000 in PIP benefits that it paid to Hamburger. State Farm is not entitled to this offset.

To put this issue in context, it must be remembered that the PIP benefits paid to Hamburger were unquestionably paid on account of his herniated disk and the associated surgery and medical expenses. By contract, PIP benefits, as applied to this case, only extend to medical and funeral expenses and lost income. It is undisputed that Hamburger did not suffer any lost incomes as a result of this accident, and he never submitted a claim to State Farm for lost income. Thus, the only claim covered by PIP that Hamburger ever submitted to State Farm was for medical expenses.

It is, moreover, also undisputed that all of the medical expenses that Mr. Hamburger submitted to State Farm related to the diagnosis and treatment of his herniated disk and surgery. Thus, State Farm's PIP payment to him was necessarily related to the herniated disk and was necessarily for expenses and damages that this jury was precluded from awarding to him. Accordingly, there is no danger of a double recovery and hence no basis for an offset for the PIP payment.

State Farm argues that it is entitled to a credit for the PIP payment made to Mr. Hamburger under Section II. B of the uninsured motorist coverage of the policy. This provision states:

In order to avoid insurance benefit payments in excess of actual damages sustained, subject only to the limits set out in the Declarations and other applicable provisions of this coverages, we will pay all covered damages not paid or payable under any workers' compensation law, disability benefits law, any similar law, auto medical expense coverage or Personal Injury Protection Coverage.

The provision does not entitle State Farm to a credit or offset in the amount of the PIP payment. An identical provision was at issue in *Mid-Century Ins. Co. v. Kidd.*[61] The court there held that offset provisions of this nature are enforceable, but construed them as "nonduplication provisions," by which the court meant that they are only enforceable to the extent necessary to prevent a double recovery. As the court said, "the only effect of the PIP offset provision is to bar double recoveries. It does not prevent stacking of UM and PIP protections to cover actual damages."[62]

Here, there is no danger of double recovery because the PIP payment was made to compensate for the herniated disk and the $50,000 awarded by the jury was for pain and suffering unrelated to the herniated disk.

The same analysis applies to the payment received from Old American. Perhaps in the ordinary case an offset is required for payments received from the underinsured motorist's carrier. But, the logic of any such offset could only be to

---

[61] 997 S.W. 2d 265 (Tex 1999).

[62] 997 S.W.2d at 271.

avoid double recovery or overcompensation to the plaintiff. Here (1) Old American

paid its policy limits *with* consideration of Hamburger's herniated disk and surgery.

There is thus no possibility of Hamburger receiving a double recovery. Accordingly,

State Farm should not be allowed an offset for the $25,000 paid by Old American.

# CONCLUSION

When the record of this case is viewed in its entirety, the unmistakeable conclusion is that grave mistakes were made. Plaintiff was deprived of substantial justice.

The lower court abused its discretion when it granted defendant's motion for partial summary judgment while denying plaintiff the opportunity to conduct discovery. Moreover, the facts as established by the pleadings, including the defendant's answer and the records it and plaintiff introduced established a material dispute. In cases, such as this, where the state of mind of the defendant is in issue, summary judgment is rarely appropriate. Here, based on the pleadings and exhibits, summary judgment clearly did not lie.

Likewise, the court's decision to strike the testimony of Dr. Fitzgerald was an abuse of discretion. A report from her was not required under the provisions Rule 26 (a)(B)(2). All that the Docket Control Order required was the exchange of expert reports as required by Rule Rule 26 (a)(B)(2). Besides, the preferred remedy should have been to grant plaintiff's motion to continue. Under the circumstances the lower court's ruling was unreasonably harsh and severe.

Similarly, the lower court's decision to take the issue of causation from the jury was error. There was more than sufficient evidence to present the issue to the jury

under Texas jurisprudence.  It was error for the court to do so.

Wherefore, plaintiff request that this Court reverse the lower court on all points, and remand this matter for a new trial on all of plaintiff's claims.

Respectfully submitted

TIMOTHY W. CERNIGLIA, ESQ.
SHARP, HENRY, CERNIGLIA,
COLVIN, WEAVER & HYMEL, L.L.C.
400 POYDRAS STREET, SUITE 1330
NEW ORLEANS, LOUISIANA 70130
Telephone:  (504) 586-1555
Facsimile:  (504) 586-9755

THOMAS M. FARREL, ESQ.
NICKENS, KEETON, LAWLESS,
 FARRELL & FLACK, L.L.P.
600 TRAVIS, SUITE 7500
HOUSTON, TEXAS 77002
Telephone:  (713) 571-9191
Facsimile:  (713) 571-9652

ATTORNEYS FOR APPELLANT
Perry Hamburger

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing, both in paper and electronic form, and all attachments thereto has been served on all parties, at the addresses indicated in the certificate of interested persons, by facsimile and by placing a copy of same in the United States mail, postage prepaid, properly addressed, this 12th  day of February, 2003.

_____

Timothy W. Cerniglia

# CERTIFICATE OF COMPLIANCE WITH RULE 32(a)

1. This brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because:

☐     this brief contains <u>13,905</u> words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) or

☐     this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed R. App. P. 32 (a)(6) because:

☐     this brief has been prepared in a proportionally spaced typeface using <u>WordPerfect 10.0 in font size 14, Times New Roman</u>, or

☐     this brief has been prepared in a monospaced typeface using _____ with _____.

(s)_____

**Attorney for Mr. Perry Hamburger**
**Plaintiff-Appellant**

Dated: _____